# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:09-cr-00067 |
| v. | § | Judge Mazzant |
| | § | |
| MICHAEL EUGENE DANNELLY | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court is Defendant Michael Eugene Dannelly's Opposed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Based on Extraordinary and Compelling Circumstances (Dkt. #87). The Court, having considered the Motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

## BACKGROUND

On August 8, 2009, Michael Eugene Dannelly ("Dannelly") was indicted for five counts of Mail Fraud and five counts of Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1956(a)(1)(B)(i). Dannelly was alleged to have owned or controlled several oil and gas companies through which he defrauded numerous investors (Dkt. #56). On August 11, 2009, Dannelly pleaded guilty to Count One, Mail Fraud (*see* Dkt. #15). The Court sentenced Dannelly to 210 months' imprisonment to be followed by a three-year term of supervised release. Dannelly was also ordered to pay restitution in the amount of $17,730,922.46. Dannelly is serving his sentence at FCI La Tuna. *See* https://www.bop.gov/inmateloc/ (Register Number: 25954-048). Dannelly has served only 138 months of his 210-month sentence, but has a total time served of approximately 157 months as credit for good conduct (Dkt. #91 at p. 1). The Bureau of Prisons ("BOP") projects he will be released on February 2, 2025 (Dkt. #91 at p. 1).

Dannelly seeks compassionate release based on his chronic obstructive pulmonary disease ("COPD"), hypertension, chronic bronchitis, peripheral artery disease ("PAD"), and atrial fibrillation (Dkt. #87 at p. 10).  Dannelly argues his medical conditions constitute "extraordinary and compelling circumstances" to grant a sentence reduction (Dkt. #87 at p. 1).  The Government opposes the sentence reduction, arguing Dannelly has not demonstrated "an extraordinary and compelling reason" and a sentence reduction is unwarranted based on the § 3553(a) factors (Dkt. #91 at p. 13).

## LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release.  Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194.  Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release.  Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A).  Prior to this change, the BOP retained sole

gatekeeping authority over compassionate release petitions. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020).  This resulted in underuse and mismanagement.[1]  *Id.*  Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release." Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination.  Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[2]  By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  However, since passage of the First Step Act, the Sentencing Commission has not updated its guidelines on compassionate release.[3]  This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that § 1B1.13 is no longer binding on a district court. *See United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a).  In reaching this conclusion, we align with every circuit court to have addressed the issue.").  Under this new framework,

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020).  And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

[3] The Sentencing Commission currently lacks a quorum to issue new guidelines.

§ 1B1.13 still binds district courts on motions made by the BOP, but, for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist. *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release").

Despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling reasons" exist.  First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added).  Second, the Sentencing Commission's policy statement and commentary is still persuasive. *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)").  Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-

care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver. U.S.S.G. § 1B1.13, n.1(A)-(C).  Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release. *See* PS 5050.50 ¶¶ 3–6.  These grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[4] *Id.*

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist.  First, while rehabilitation alone is not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[5]  *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation).  If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated. *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).  Second, courts consider any changes in law and the sentencing guidelines when

---

[4] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).
[5] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community.  Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

determining if a sentence is extraordinary.  For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking. *See McCoy*, 981 F.3d at 285 ("As the court observed in *Bryant*, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A)").  Though Congress did not retroactively eliminate § 924(c) sentence-stacking, courts consider whether the outdated policy warrants relief on a case-by-case basis.[6]

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

---

[6] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 123—24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*".)

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## DISCUSSION

Dannelly moves for compassionate release based on his COPD, hypertension, chronic bronchitis, PAD, and atrial fibrillation (Dkt. #87 at p. 10).  Dannelly argues these medical conditions, coupled with the ongoing COVID-19 pandemic, warrant a sentence reduction.  The Government argues Dannelly's conditions are not severe enough to qualify for compassionate release (Dkt. #91).

Although Dannelly has met § 3582(c)(1)(A)'s exhaustion requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence.  Dannelly's motion, therefore, must be denied.

**I.    Dannelly Has Met § 3582(c)(1)(A)'s Exhaustion Requirement.**

Dannelly's compassionate release motion may only be considered if he first meets § 3582(c)(1)(A)'s exhaustion requirement.   Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. 18 U.S.C. § 3582(c)(1)(A).  Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility, or the passing of thirty days after the warden's receipt of a defendant's request, whichever is earlier.[7] *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that

---

[7] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."). If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

On April 27, 2020, Dannelly asked the warden at FCI La Tuna to grant him compassionate release (Dkt. #87 Exhibit E). On July 7, 2020, the warden approved Dannelly's compassionate release request. However, the BOP Office of General Counsel subsequently overruled the warden's approval and denied Dannelly's request (Dkt. #87 at p. 3). More than thirty days have passed since Dannelly made the request. Dannelly has, therefore, met § 3582(c)(1)(A)'s exhaustion requirement.

## II.   Dannelly Has Not Met § 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.

Dannelly's compassionate release motion turns on his assertion that the risks to his health associated with COVID-19—coupled with his COPD, hypertension, chronic bronchitis, PAD, and atrial fibrillation—constitute extraordinary and compelling reasons to reduce his sentence. Dannelly's assertion fails because his conditions are not severe enough to constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

The Court has discretion to decide whether Dannelly's conditions present "extraordinary and compelling reasons" warranting a sentence reduction. *See Shkambi*, 993 F.3d at 392-3. The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating Dannelly's condition of incarceration. *Id.* Typically, courts consider

-8-

whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of defendant's offense, and whether a sentence is based on outdated law. *See Brooker*, 976 F.3d at 238.

Rehabilitation alone cannot support a claim for sentence reduction, but may be considered as a factor in evaluating "extraordinary and compelling reasons." *See Brooker*, 976 F.3d at 237-38; *United States v. Hudec*, No. 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 20, 2020). Here, Dannelly has taken numerous classes offered by the BOP and has maintained employment during his incarceration (Dkt. #87 at pp. 15, 16).  Dannelly has remained infraction-free and "remains firmly committed to a life of abstinence from drugs and alcohol" (Dkt. #87 at p. 15). Dannelly also has significant family support willing to assist him following his release (Dkt. # 87 at p. 17).  Accordingly, the Court finds that Dannelly's rehabilitative record supports his release.

When considering if a defendant's health condition supports compassionate release, the mere existence of COVID-19 in society cannot independently justify a sentence reduction. *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  For a defendant to be granted compassionate release based on COVID-19, defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus. *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

In the instant case, Dannelly fails to show any health conditions that warrant compassionate release.  Dannelly is not subject to a terminal illness.  Dannelly's conditions do not substantially diminish his ability to provide self-care in prison (Dkt. #87 Exhibit E at p. 3).  While Dannelly has comorbidities of COVID-19, his health appears stable at this time and he has received both doses of a COVID-19 vaccine (Dkt. #91 at p. 13).  Further, COPD, hypertension, chronic bronchitis, PAD, and atrial fibrillation are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances. *See United States v. Manzano*, No. 16-cr-20593, 2020 WL 7223301, at *3–4 (E.D. Mich. Dec. 8, 2020) (collecting cases and finding hypertension and diabetes were "extraordinary and compelling" when combined with defendant's age and the lack of health protections implemented by her facility); *see also United States v. Guyton*, No. 11-271, 2020 WL 2128579, at *3 (E.D. La. May 5, 2020) (denying compassionate release for a 45-year-old with mild hypertension).  Dannelly has not indicated that he has any physical restrictions, aside from those related to the successful management of his medical conditions by medical professionals.  His age of 62 also does not support compassionate release.

Absent COVID-19, Dannelly would present no basis for compassionate release because his medical ailments are appropriately managed and do not impede his ability to provide self-care in the institution.  As noted in the warden's consideration of Dannelly's initial request for compassionate release, "our medical staff have determined the BOP can provide conventional treatment that can substantially improve his physical condition over time" (Dkt. #87 Exhibit E at p. 3).  Further, FCI La Tuna reports zero active cases among inmates and only four active cases among staff. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited April 27, 2021).  Though the alleged social

distancing restrictions at FCI La Tuna are disturbing, Dannelly fails to present evidence demonstrating a serious risk to his health.

Weighing the evidence, Dannelly's rehabilitative efforts are impressive, but he fails to prove that his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i) framework. *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release").[8]

\*   \*   \*

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same).  Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Dannelly has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his motion must be denied.[9]

## CONCLUSION

It is therefore **ORDERED** that Defendant Michael Eugene Dannelly's Opposed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Based on Extraordinary and Compelling Circumstances (Dkt. #87) is **DENIED**.

**IT IS SO ORDERED.**

---

[8] Given Dannelly's failure to meet § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

[9] In the alternative, the Court is also unable to order home confinement.  The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

**SIGNED this 28th day of September, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE